818 So.2d 152 (2002)
Stanford Mark JUNOT and Tracey A. Jackson
v.
Dwayne O. MORGAN, Burger King Corporation, Jane Doe and Mary Doe and Sydran Foods, Inc.
No. 2001 CA 0237.
Court of Appeal of Louisiana, First Circuit.
February 20, 2002.
*154 Robert Marionneaux, Jr., Livonia, Counsel for Plaintiffs/Appellees Stanford Mark Junot and Tracey Jackson Junot.
Daniel A. Reed, Baton Rouge, Counsel for Defendant/Appellant Sydran Foods Services II, L.P.
Before: GONZALES, KUHN, and CIACCIO[1], JJ.
KUHN, J.
Defendant-appellant, Sydran Food Services II, L.P., operating under the name Burger King ("Burger King"),[2] appeals both the judgment incorporating the jury's verdict and the amended judgment rendered by the trial judge pursuant to a judgment notwithstanding the verdict ("JNOV") filed by plaintiffs-appellees, Stanford "Mark" Junot and Tracey Jackson.[3] On appeal, the JNOV judgment is *155 reversed and, after modification for the erroneous denial of Burger King's JNOV, the original judgment incorporating the jury's verdict is remanded to be reinstated by the trial court. Finding that this court lacks jurisdiction to review the judgment which will be reinstated, the matter is remanded to the trial court.

I. FACTUAL AND PROCEDURAL BACKGROUND
On February 17, 1998, plaintiffs filed this lawsuit averring entitlement to damages as a result of injuries they received on November 6, 1997, when Dwayne Morgan made physical contact with Tracey Jackson, and subsequently struck Mark Junot in the face with his fist while they were on the premises of a Burger King restaurant located in Plaquemine, Louisiana. Among those named as defendants was Burger King, who answered the lawsuit generally denying the allegations of liability.
The matter proceeded to trial by jury. At the close of plaintiffs' case-in-chief, Burger King moved for a directed verdict, which was denied. Thereafter, the jury rendered a verdict which concluded that Burger King was negligent in causing the injuries to Junot and Jackson. According to the jury's verdict, fault was apportioned as follows: six percent to Burger King, 77 percent to Morgan, ten percent to Junot, and seven percent to Jackson. Total damages in the amount of $37,331.49 were awarded to Junot, and the total amount of $1,400.00 was awarded to Jackson. A judgment, signed by the trial court on February 11, 2000, ordered Burger King to pay Junot $2,239.89, reflecting Burger King's six percent fault and $84.00, six percent of $1,400.00, to Jackson. Costs were assessed against Burger King.
The parties each filed motions for JNOV. Plaintiffs accompanied their JNOV request with an alternative motion for new trial. After a hearing on April 24, 2000, the trial judge expressly denied Burger King's motion and granted JNOV in favor of plaintiffs.[4] By judgment dated August 29, 2000, the trial judge reapportioned fault in accordance with his rulings at the hearing on the various post-verdict motions filed by the parties. He determined, among other things, that Morgan was fifty percent at fault and re-apportioned Burger King's fault to forty percent. The trial judge also reassessed damages and awarded lump sums of $100,000.00 to Junot and $10,000.00 to Jackson. Reflecting the trial judge's reapportionment of fault, the August 29, 2000 judgment ordered Burger King to pay damages of $40,000.00 to Junot and $4,000.00 to Jackson. Burger *156 King suspensively appealed both the February 11, 2000 judgment, which incorporated the jury's verdict, and the August 29, 2000 judgment on the JNOV, which set aside the February 11, 2000 judgment.
On appeal, Burger King urges that the trial court erred by denying its motion for JNOV, contending that it did not owe a duty to either Jackson or Junot under the facts of this case. Thus, Burger King urges that it is not liable to plaintiffs for any of their damages. Additionally, Burger King challenges the trial court's grant of plaintiffs' motion for JNOV, which reapportioned fault and reassessed damages.

II. TRIAL COURT'S RULING ON PLAINTIFFS' NEW TRIAL MOTION
We initially note that although the judgment signed by the trial court in conformity with its rulings from the hearing on the parties' various post-verdict motions expressly grants plaintiffs' JNOV and denies that filed by Burger King, it does not expressly set forth a determination on the plaintiffs' alternative motion for new trial filed contemporaneously with their motion for JNOV. It is well settled that silence in a judgment as to any issue litigated is construed as a rejection of that issue. See Succession of Brantley, 96-1307, p. 9 (La. App. 1st Cir.6/20/97), 697 So.2d 16, 20. Thus, under the facts of this case and pursuant to the August 29, 2000 judgment, we conclude the trial court implicitly denied plaintiffs' alternative motion for new trial. On appeal, the parties have raised no contentions relating to the implicit denial of plaintiffs' motion for new trial.

III. PROPRIETY OF BURGER KING'S APPEAL OF THE JUDGMENT, WHICH INCORPORATES THE JURY'S SET-ASIDE VERDICT
Because the trial judge granted plaintiffs' motion for JNOV, the jury's verdict was set aside. See La. C.C.P. art. 1811. Thus, the August 29, 2000 judgment rendered in conformity with the trial judge's rulings superceded the February 11, 2000 judgment which incorporated the jury's verdict. As such, at the time this appeal was lodged, the February 11, 2000 judgment was procedurally in abeyance. Therefore, when Burger King lodged its appeal of the February 11, 2000 judgment, it was requesting of this court a review of a judgment which was procedurally in abeyance and without legal effect since it is a judgment which purports to incorporate a verdict that was "set aside."
Louisiana Civil Code of Procedure article 1811E states:
If the motion for a [JNOV] is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a [JNOV]. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted. (Emphasis added.)
Thus, the party who prevailed on the JNOV at the trial court levelbut whose favorable JNOV determination is subsequently reversed on appealmay be the subject of a ruling in the trial court on new trial grounds at the direction of the court of appeal. It follows that it is premature for an appellate court to consider an appeal of the judgment which incorporates the set-aside verdict at the same time it reviews the propriety of the trial court's ruling on the motion for JNOV. To do so has the potential effect of terminating the post-judgment rights of the parties, for *157 example, the right to a new trial ruling in the trial court under La. C.C.P. art. 1811 E. When Burger King lodged this appeal of the February 11, 2000 judgment, that appeal was premature.
An appellate court may dismiss an appeal for lack of jurisdiction on its own motion at any time. See La. C.C.P. art. 2162. Therefore, we dismiss as premature Burger King's appeal of the February 11, 2000 judgment incorporating the jury's verdict as this judgment has been set aside by the judgment dated August 29, 2000. We now address Burger King's contentions challenging the rulings of the trial judge on the parties' motions for JNOV.

IV. REVIEW OF JUDGMENT RENDERED IN CONFORMITY WITH THE JNOV DETERMINATIONS
Louisiana Code of Civil Procedure article 1811 is the authority for a JNOV. In Davis v. Wal-Mart Stores, Inc., 00-0445, pp. 4-5 (La.11/28/00), 774 So.2d 84, 89, the Louisiana Supreme Court discussed the standard to be used in determining whether a JNOV has been properly granted:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
The standard of review for a JNOV on appeal is a two-part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. In other words, do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion. Joseph v. Broussard Rice Mill, Inc., 00-0628, p. 5 (La.10/30/00), 772 So.2d 94, 99. If we determine that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Davis, 00-0445 at p. 5, 774 So.2d at 89.

A. Jackson

1. Burger King's Liability
On appeal Burger King contends the trial court's denial of its motion for JNOV was erroneous because as a matter of law it did not owe a duty to Jackson under the facts of this case.
Although the trial judge's discretion is limited in applying the JNOV standard, in cases where virtually no factual dispute exists and no credibility determinations by the fact-finder are required, questions of existence of a duty, violation of that duty, and victim fault are legal questions, and within the province of the *158 trial judge to decide. Millet v. Cormier, 95-953, p. 12 (La.App. 3d Cir.3/27/96), 671 So.2d 1101, 1108, writs denied, 96-1026, 96-1039 (La.5/31/96), 673 So.2d 1036.
Whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Terrell v. Wallace, 98-2595, p. 4 (La.App. 1st Cir. 12/28/99), 747 So.2d 748, 750, writ denied, XXXX-XXXX (La.3/24/00), 758 So.2d 158; Albritton v. Woods, 34,073, p. 7 (La.App.2d Cir.9/28/01), 795 So.2d 1239, 1242. Business owners are not the insurers of their patrons' safety, but they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. Generally, there is no duty to protect others from the criminal activities of third persons. This duty only arises under limited circumstances when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry. Posecai v. Wal-Mart Stores, Inc., 99-1222, pp. 5-6 (La.11/30/99), 752 So.2d 762, 766.
The testimonial evidence before the jury about Morgan's physical contact with Jackson was conflicting. According to Jackson's recall of events, Morgan walked past her and "rubbed up [her] back." She described that he "started at my buttocks and rubbed his hand all the way up my back ... and he flipped my hair."
Burger King employee, Vera Kelly, remembered "[Morgan]backed up without looking and he backed into [Jackson]." She testified that Morgan's response was to apologize to Jackson and to indicate that the physical contact was an accident. Kelly stated that Jackson then retorted to Morgan, "Why you people do that[?]"
Despite the conflicting versions of how physical contact was made, and assuming that the jury concluded Jackson was inappropriately touched by Morgan, the record is devoid of any evidence that Morgan's contact was foreseeable to Burger King employees. The uncontroverted evidence establishes that Morgan's acteven if it occurred as Jackson describedwas unforeseeable to Burger King. Thus, under the facts of this case, Burger King did not owe a duty to implement measures to protect patrons like Jackson from physical contact made by third persons. Aside from the physical contact by Morgan within the premises of Burger King, there is no evidence of any other injury to Jackson for which she may claim damages.[5] Thus, Burger King owed no duty to Jackson.

2. Burger King's Fault and Jury's Award of Damages
Because we have concluded that Burger King owed no duty to Jackson to protect her from the unforeseeable physical contact made by Morgan, Burger King is not liable to her for her injuries. The trial judge erred in denying Burger King's motion for JNOV on the issue of its liability to Jackson and in granting Jackson's motion for JNOV. Accordingly, we conclude the determinations which apportioned fault and assessed damages against Burger King in favor of Jackson are erroneous.

B. Junot

1. Burger King's Liability
Having concluded that the trial court erred as a matter of law in its determination *159 that Burger King owed a duty to Jackson, we turn now to Burger King's liability to Junot. Burger King urges that, as with Jackson, the trial court erred as a matter of law in concluding that Burger King owed a duty to Junot under the facts of this case. Burger King suggests that the trial judge erred both in denying Burger King's motion for JNOV and in granting that of Junot. We disagree.
The record contains the following evidence to support findings that Burger King owed a duty to Junot, which it breached. Burger King witness, Josie Thomas, was a shift manager working at the restaurant on November 6, 1997, and actually saw Morgan punch Junot. Thomas testified that before Jackson and Junot arrived, Morgan was at the counter talking to Kelly for a couple of minutes. She recalled the two were laughing and joking. The Burger King shift manager said it was not within Burger King's policy to allow people to converse with counter personnel unless it was very important. She believed that Kelly and Morgan were "visiting," apparently as Morgan was waiting for his food. According to Thomas, Kelly should have taken control of the situation by telling Morgan not to bother the customer or to be quiet when he started verbally interacting with Jackson. The former Burger King manager stated that Kelly should have asked Morgan to leave the premises once Jackson complained.
Although Kelly stated that she asked Morgan to leave, Jackson testified that Kelly did not. Jackson said that Kelly did nothing to advise Morgan to refrain from engaging in a verbal dispute with her or to otherwise lend her assistance. By Kelly's admission, Morgan and Jackson were "word to word with each other" to the point where the Burger King employee became concerned enough to attempt to hurry along the preparation of Morgan's order.
In concluding Burger King was negligent in causing Junot's damages, the jury could have believed Jackson's testimony that Kelly did not ask Morgan to leave the premises or otherwise lend Jackson assistance once the verbal dispute arose between the customers. As such, the jury could have reasoned that had Burger King employee Kelly requested patron/visitor Morganwho had just made physical contact with patron Jackson and then engaged in a verbal dispute with herto leave the premises, the subsequent criminal conduct of Morgan punching Junot could have been avoided. And we cannot say as a matter of law that a subsequent altercation between Junot, a male patron accompanying Jackson (in this case her fiancé), and Morgan was not foreseeable.[6] Accordingly, we find no error in the trial court's denial of Burger King's motion for JNOV seeking reversal of the jury's verdict that Burger King that it is liable to Junot, as the facts and inferences do not point so strongly and overwhelmingly in favor of Burger King that the jury could not arrive at a contrary verdict on the issue of Burger King's liability to Junot.

*160 2. Burger King's Fault
Burger King maintains that if it is liable to Junot, the trial court's grant of Junot's motion for JNOV to reapportion Burger King's fault from six percent to forty percent was erroneous. Thus, in this appellate review, we must determine whether the facts and inferences pointed so strongly in favor of Junot that the jury could not have arrived at any other verdict than that Burger King was forty percent at fault in causing Junot's damages.
In determining apportionment of fault, the trier of fact should consider the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages. The factors to be considered include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).
Morgan was the person who struck Junot, and the jury apportioned the greatest amount of faultseventy-seven percentto him. The trial judge in reapportioning Burger King's fault reduced the seventy-seven percent apportioned by the jury to Morgan to forty percent, which was less than one-half of the total fault. The ten percent fault the jury apportioned to Junot was left intact by the trial judge.
Clearly, Morgan was the person who had the superior capacity to prevent the harm. He delivered the blow which caused the injuries. And the evidence before the jury did not suggest the only conclusion was a greater percentage of fault be apportioned to Burger King than Junot. Kelly testified that Morgan struck Junot after Junot made a racially and sexually derogatory comment, which Morgan overheard. Manager Thomas corroborated that Junot "mumbled something" prior to Morgan's punch, although she testified that she did not understand what Junot said. While both Jackson and Junot denied that Junot made the comment, the jury must have believed Kelly on this factual issue as evinced by the ten percent fault it apportioned to Junot, a percentage that was greater than the six percent it allotted to Burger King. In light of the evidence in this record, we cannot say that the facts and inferences pointed so strongly and overwhelmingly in favor of Junot that the jury could have reached no result other than that Burger King should bear a greatest percentage of fault than Junot. In this case, Junot's action of making a racially and sexually derogatory comment to Morgan can certainly be found to create a greater risk of harm than Kelly's failure to ask Morgan to refrain from speaking or to leave the restaurant.
Because reasonable persons in the exercise of impartial judgment might reach a conclusion that more of the fault lies with Junot and Morgan than with Burger King, we find the trial judge erred in granting plaintiffs' motion for JNOV on the issue of apportionment of fault. Accordingly, that portion of the August 29, 2000 judgment which reapportions fault is reversed.

3. Damages
On review of a JNOV award of higher quantum, the appellate court employs the same criteria as the trial court. If reasonable men, in the exercise of impartial judgment, could reach differing opinions on whether the award was abusively low, then the trial court erred in granting the JNOV and the jury's damage award should be reinstated. Thibodeaux *161 v. Wal-Mart Stores, Inc., 98-0556, p. 2 (La.App. 1st Cir.4/1/99), 729 So.2d 769, 771, writ denied, 99-1244 (La.6/18/99), 745 So.2d 28. On the other hand, if reasonable men could not disagree, then the trial court properly granted the JNOV and the appellate court will review the damage award based on the trial court's independent assessment of damages under the abuse of discretion standard. Id.
The jury awarded damages to Junot as follows: $12,331.47 for past medical expenses; $3,000.00 for past lost wages; $10,000.00 for past physical pain and suffering; $7,000.00 for past mental and emotional pain and suffering, including mental anguish and emotional distress; and $5,000.00 for past loss of enjoyment of life and permanent physical disability. Thus, total damages to Junot amounted to $37,331.49. Granting plaintiffs' motion for JNOV, the trial judge awarded a lump sum of $100,000.00 to Junot. Based on the evidence presented to the jury, we find that the trial judge's grant of JNOV on the issue of the jury's quantification of fault was not warranted.
While the evidence established that Junot was knocked unconscious by the blow, and that he needed surgery, his doctor described his injury as a left, mild, facial fracture known as a trimalar fracture, which was consistent with someone having been struck in the face. Junot admitted to the jury that he had not returned to the physician since December 23, 1997. The jury awarded Junot all his medical expenses, his past, lost wages and $22,000.00 in general damages. We cannot say that the facts and inferences pointed so strongly in favor of Junot that reasonable persons could not reach arrive at a contrary award other than $100,000.00. The trial judge's reassessment of damages was erroneous as reasonable men, in the exercise of impartial judgment, could reach a different conclusion on whether the award was abusively low.
In sum, the trial judge erred in denying Burger King's motion for JNOV on the issue of Burger King's liability to Jackson. It was, therefore, error for the trial judge to enter JNOV in favor of Jackson. But because Burger King was not entitled to JNOV on the issue of its liability to Junot, the trial court correctly denied that portion of Burger King's motion for JNOV. The trial judge also erred when he granted JNOV in favor of Junot on the issue of the jury's apportionment of fault and assessment of damages. Accordingly, the August 29, 2000 judgment is reversed. Having concluded that the trial judge erroneously denied Burger King's motion for JNOV on the issue of its liability to Jackson, we remand the case for reinstatement of the February 11, 2000 judgment, which incorporates the jury's verdict, save that portion of the original judgment which quantifies Burger King's fault and awards damages in favor of Jackson.

V. CONCLUSION
For all these reasons, the amended judgment signed on August 29, 2000, granting the JNOV filed by plaintiffs is vacated. After modification to vacate that portion which awarded $84.00 in damages to Jackson, the February 11, 2000 judgment rendered in conformity with the jury's verdict is remanded for the trial court to reinstate. The trial court is ordered to render and sign judgment on the jury verdict, allowing for all further proceedings or appeals as provided by law in accordance with this opinion. Costs of this appeal are assessed equally, i.e., one-half to plaintiffs, Stanford Mark and Tracey Jackson Junot, and one-half to Sydran Food Services II, L.P., operating under the name Burger King.
*162 JNOV JUDGMENT REVERSED; WITH MODIFICATION, ORIGINAL JUDGMENT IS TO BE REINSTATED BY TRIAL COURT; APPEAL OF FEBRUARY 11, 2000 JUDGMENT DISMISSED; AND MATTER REMANDED.
GONZALES, J., concurs and assigns reasons.
GONZALES, J., Concurring.
I concur with the majority opinion. Although I generally agree with the majority's treatment of the JNOV issues, I do not believe the matter should be remanded "for all further proceedings or appeals...." Indeed, further proceedings may be needed to carry out the jury's verdict. The problem is whether there should be further appeals.
Frequently, this court considers an entire case pursuant to a writ application when a motion for summary judgment has been denied. Further, when there is an outstanding motion for new trial, this court can again consider the case and send it back down. If there is also a JNOV which requires a remand and further appeals, this court would find itself in the position of considering a simple tort, suit like this one four times, with the further possibility of four applications to the supreme court for writs.
Our already overburdened appellate system must be more efficient. As I appreciate federal jurisprudence, to which we look for guidance on JNOV issues,[1] when a JNOV is granted, all matters involving the underlying jury verdict should be taken up at one time. As for the motion for new trial, La. C.C.P. art. 1811 takes care of that situation. When a motion for JNOV is made by either party, either can also file a motion for new trial. If the motion for JNOV is granted, the trial court shall rule on any motions for new trial. The trial court shall either conditionally grant or conditionally deny the motions for new trial and must give reasons therefor. As I interpret La. C.C.P. art. 1811(C), when this occurs, the action of the lower court on both the JNOV and the motion for new trial is properly before the appellate court.
It may be true that an underlying jury verdict is "procedurally in abeyance" when a JNOV is granted. However, the jury verdict can be revived by action of the appellate court upon the reversal of the JNOV, which then makes the jury verdict ripe for review at that time. Any party that disagreed with any aspect of the jury's verdict could and should have appealed the jury verdict.
I understand the majority's concern that many attorneys may not be aware of a need to appeal an underlying jury verdict when a JNOV has been granted. A similar trap for the unwary still exists where there are separate verdicts on multiple issues, where the trial court denies a JNOV as to less than all of those verdicts, where the only issue appealed is the denial of the JNOV, and where the JNOV is subsequently reversed by the appellate court. What opens the door to raise those verdicts not affected by the JNOV since no one appealed these issues the first time? Are the underlying jury verdicts final and definitive judgments or are they only now ripe for appeal? Suppose the appellate court does not reverse the JNOV. Are the underlying jury verdicts final and definitive or are they only now ripe for appeal?
The problems caused by JNOV are multiplied because of the partial judgments *163 available under La. C.C.P. art. 1915. For examples of these issues, see Strain v. Indiana Lumberman's Mutual Insurance Company, 2000 CA 2720 (La.App. 1 Cir. 2/20/02), 818 So.2d 144; Delco v. Stafford et al., 2001 CA (La.App. 1 Cir. 2/20/02), 813 So.2d 458.
I can only caution people who play with fire to be carefulthey may be burned. In seeking the extraordinary remedy of JNOV, one should always be mindful of the potential effects of the reversal of the grant or denial of the JNOV. Plaintiffs and defendants who face multiple appeals with the attendant costs and delay may well avoid this device altogether unless an efficient way of adjudicating these matters is established.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although in their original petition, plaintiffs identified the restaurant premises owner as Burger King Corporation, they subsequently amended the pleading to name that defendant as Sydran Food Services II, L.P.
[3] Although Tracey Jackson and Mark Junot were subsequently married, the November 6, 1997 incident preceded their marriage. Thus, we refer to her as "Jackson" throughout this opinion.
[4] The record shows that the trial court rendered a judgment on August 1, 2000, which ostensibly was "Read and Signed" on August 14, 2000. On August 11, 2000, Burger King filed a document entitled "MOTION TO AMEND JUDGMENT OR, ALTERNATIVELY, FOR A NEW TRIAL." According to the allegations of that motion, Burger King sought to amend the August 14, 2000 judgment on the grounds that it was unclear and did not reflect the ruling of the trial court at the hearing on the parties' motions for JNOV and plaintiffs' alternative motion for new trial. The allegations of Burger King's August 11, 2000 pleading state, "Should it be deemed required, [Burger King] moves for a new trial in order to correct the provisions of the [August 14, 2000] judgment." The motion expressly notes that plaintiffs had no objection. Thereafter, on August 29, 2000, the trial court issued another judgment entitled "Amended Judgment," which was signed by the trial judge and apparently conformed to the parties' understanding of the trial court's rulings on the motions for JNOV and plaintiffs' alternative motion for new trial. On appeal, the parties raise no complaints related to the August 11, 2000 judgment, which they agree was superceded by the August 29, 2000 judgment.
[5] Because Jackson and Junot were not married on the date of the incident and there is no evidence to support findings of consequent loss of consortium damages, the jury's awards could not have been for loss of consortium damages. See Gilbert v. Laborde, 93-761, p. 2 (La.App. 3d Cir.2/2/94), 632 So.2d 1162, 1169, (on rehearing)(noting that the successful claimant for loss of consortium damages has to prove the liability of the defendant, his or her spouse's damages, and his or her consequent loss of consortium damages).
[6] Burger King suggests the trial court erred in permitting excerpts of 911 telephone logbooks of the Iberville Sheriff's Office and the testimony of Iberville Sheriff Deputy Blair Favron into evidence, asserting that neither was properly listed in the pre-trial order. Burger King further complains that the contents of the logbooks were hearsay, irrelevant, and highly prejudicial evidence introduced solely to support plaintiffs' contention that Burger King had a duty to post security guards, which ostensibly would have prevented the injuries by Morgan to Junot. Because the record otherwise provides a basis for imposition of liability on Burger King for Junot's damages, we find any error in admission of the evidence is harmless. See La. C.E. art. 103 A.
[1] See Rougeau v. Commercial Union Insurance Company, 432 So.2d 1162, 1166-1167 (La. App. 3 Cir.1983).