859 So.2d 131 (2003)
Timothy K. DUNAWAY
v.
LAKEVIEW REGIONAL MEDICAL CENTER.
No. 2002 CA 2313.
Court of Appeal of Louisiana, First Circuit.
August 6, 2003.
*132 Irving J. Warshauer, Tracey L. Rannals, New Orleans, Counsel for Plaintiff/Appellant Timothy K. Dunaway.
S. Daniel Meeks, Patrice W. Oppenheim, Metairie, Counsel for Defendant/Appellee Lakeview Regional Medical Center.
Before: CARTER, C.J., WHIPPLE and CIACCIO,[1] JJ.
CIACCIO, J.
This is an appeal from a workers' compensation proceeding in which the claimant was denied relief upon a finding that he failed to prove he contracted a Pseudomonas aeruginosa infection during the course and scope of his employment at a hospital. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
The claimant, Timothy K. Dunaway, began his employment with Lakeview Regional Medical Center (Lakeview) in Covington, Louisiana, as a registered nurse, in 1995. On April 12, 1998, while off-duty, Mr. Dunaway was operating his recreational boat when it struck a sandbar in the Pearl River Navigational Canal. The collision caused Mr. Dunaway to suffer multiple facial and nasal fractures that required extensive reconstructive surgery. Mr. Dunaway was unable to work from the date of the accident until July 13, 1998, when his surgeon, Dr. Richard Sabatier, released him to return to work without any restrictions.
Following his return to duty, Mr. Dunaway worked in the cardiac rehabilitation unit at Lakeview until a second surgery, in August of 1999, was necessitated by complications unrelated to the instant proceedings. Thereafter, Mr. Dunaway returned to work at Lakeview in November of 1999, without restriction. Because healing of Mr. Dunaway's wounds was incomplete and he was concerned about his disfigurement, an attempt was made to avoid scheduling Mr. Dunaway to work "on the floor" or with cardiac patients having open wounds. Nevertheless, Mr. Dunaway, at times, did work "on the floor," requiring him to handle IV lines, chest tubes, urinary bladder catheters, and other wound drainage.
In December of 1999, Mr. Dunaway began to experience a green discharge and a foul smell from his nasal area, along with discomfort in the nasal cavity, and fever. On December 29, 1999, a sinus culture was collected, and it was determined that he had contracted Pseudomonas aeruginosa, a bacterial infection. Mr. Dunaway continued working until January 7, 2000. In correspondence dated January 11, 2000, Dr. Sabatier explained to Lakeview that Mr. Dunaway was unable to work because of the infection.
Although Mr. Dunaway returned to work again in February 14, 2000, he underwent *133 another surgery in April of 2000, and by June of 2000 discovered that he was still infected with Pseudomonas aeruginosa. Dr. Sabatier stated, in a June 2, 2000 letter, that Mr. Dunaway should not have contact with patients due to his infection. Because of his condition, Mr. Dunaway was unable to return to work, and has undergone additional treatment and surgeries.
On November 20, 2000, Mr. Dunaway filed a disputed claim for compensation with the Office of Workers' Compensation (OWC), contending that he contracted the Pseudomonas aeruginosa infection during the course and scope of his employment as a registered nurse at Lakeview. Following a May 16, 2002 trial, the OWC judge signed a judgment on June 24, 2002, finding that Mr. Dunaway had "failed to prove he contracted an occupational disease related to his employment at Lakeview Regional Medical Center under the provisions of La. R.S. 23:1031.1." Mr. Dunaway's suit was dismissed. From this judgment, Mr. Dunaway appealed and on appeal asserts the following assignments of error:
1) The [OWC] erred in making no finding on whether Timothy Dunaway suffered a work related "accident" at Lakeview Regional Medical Center under the provisions of La. R.S. 23:1021.
2) The [OWC] erred in finding that employee, Timothy Dunaway, failed to prove that he contracted an occupational disease related to his employment at Lakeview Regional Medical Center under the provisions of La. R.S. 23:1031.1.

LAW AND ANALYSIS
Occurrence of an Accident under La. R.S. 23:1021
Mr. Dunaway contends that he contracted the Pseudomonas aeruginosa infection at Lakeview, and thus, suffered an "accident" in the course and scope of his employment pursuant to La. R.S. 23:1021. Mr. Dunaway asserts that he is entitled to recover workers' compensation benefits as a result of the Pseudomonas aeruginosa infection. Further, Mr. Dunaway argues that the OWC judge erred in failing to make a determination as to whether he sustained a work-related accident at Lakeview.
Under La. R.S. 23:1031(A), an employee who sustains a personal injury by an accident arising out of and in the course and scope of his employment is entitled to collect workers' compensation from his employer, unless he is otherwise eliminated from benefits under the provisions of Title 23. An "accident" is defined by La. R.S. 23:1021(1) as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." The claimant has the burden of proof to establish a work-related accident by a preponderance of the evidence. Bolton v. B E & K Construction, XXXX-XXXX, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35, citing Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La. 1992). The factual findings of the OWC judge are subject to the manifest error standard of review. Bolton v. B E & K Construction, XXXX-XXXX at p. 7, 822 So.2d at 35.
In written reasons for judgment, the OWC judge reasoned as follows:
Mr. Dunaway must prove he contracted pseudomonas as a result of a cause or condition peculiar to and characteristic of his work as a nurse.

*134 * * *
Looking at the expert medical evidence as a whole, the court finds that Mr. Dunaway has failed to prove he contracted pseudomonas as a result of his employment at Lakeview. The medical evidence and literature is devoid of any support for the proposition that hospital workers are more susceptible to contracting pseudomonas than other groups. Additionally, as of his August 1999 hospitalization and surgery at St. Tammany Parish Hospital, Mr. Dunaway already exhibited risk factors for pseudomonas: he was on a course of antibiotics because of sinusitis and he was hospitalized and underwent a surgical procedure, after which he was placed in intensive care. Therefore, it is just as likely or possible that Mr. Dunaway was exposed to and contracted the bacteria during his August 1999 hospitalization.
After a thorough review of the testimony and evidence appearing in the record, we are unable to say the trial court erred in finding that Mr. Dunaway failed to prove he sustained the Pseudomonas aeruginosa infection at work. We find no merit in Mr. Dunaway's argument that the formal judgment entered by the OWC judge mentioned only that Mr. Dunaway failed to prove an "occupational disease" and did not mention that the La. R.S. 23:1021 cause of action was denied as well. Mr. Dunaway's suit was dismissed by the judgment rendered. It is well settled that silence in a judgment as to any issue litigated is construed as a rejection of that issue. Junot v. Morgan, XXXX-XXXX, p. 4 (La.App. 1 Cir. 2/20/02), 818 So.2d 152, 156.
Claim for Occupational Disease under La. R.S. 23:1031.1
In addition to Mr. Dunaway's claim under La. R.S. 23:1021, he asserts that his condition qualifies for workers' compensation benefits as an occupational disease under La. R.S. 23:1031.1, which provides, in pertinent part, as follows:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
Prior to the legislative extension of workers' compensation coverage to include occupational diseases, a worker's entitlement to compensation hinged on the occurrence of an "accident," which can only be established by the heightened burden of proof by the claimant of an "identifiable precipitous event" that caused injury. See O'Regan v. Preferred Enterprises, Inc., 98-1602, pp. 10-13 (La.3/17/00), 758 So.2d 124, 132-33. While enlarging workers' compensation coverage to cases of occupational disease, La. R.S. 23:1031.1 retains the requirement that an employee establish the disease arises from his work, i.e., from "causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in *135 which the employee is exposed to such disease." See Coats v. American Telephone & Telegraph Company, 95-2670, p. 7 (La.10/25/96), 681 So.2d 1243, 1247. Thus, the claimant must show that he contracted the disease at issue during the course of his employment and that the disease was the result of the nature of the work performed. Vargas v. Daniell Battery Manufacturing Company, 93-1249, pp. 7-8 (La.App. 1 Cir. 5/20/94), 636 So.2d 1194, 1197. The causal link between a claimant's illness and his work-related duties must be established by a reasonable probability; the claimant fails in his burden of proof upon a showing of only a possibility that the employment caused the disease or that other causes not related to the employment are just as likely to have caused the disease. Comeaux v. Star Enterprise/Motiva Enterprise, XXXX-XXXX, p. 8 (La.App. 1 Cir. 12/20/02), 836 So.2d 359, 364.
Mr. Dunaway testified at trial that he believed that he contracted his infection at work. Mr. Dunaway explained that he could have violated the universal precautions that are generally adhered to by healthcare workers, which require a worker, after handling patients, to refrain from touching his/her body and to wash his/her hands and change gloves. Mr. Dunaway asserts that he could have contracted the infection by touching himself with his glove, his bare hand, or from direct patient contact. Mr. Dunaway also surmised that the infection could have come from his lab coat or from something he touched. However, Mr. Dunaway admitted that he could not identify a specific patient with whom he had contact at Lakeview, who had a Pseudomonas aeruginosa infection during the pertinent time period.
Mr. Dunaway's co-worker at Lakeview, Peggy Verlander, was a registered nurse who also served as the director of the cardiac rehabilitation unit. Ms. Verlander testified that she prepared Mr. Dunaway's work schedule and purposefully avoided scheduling him "on the floor," handling patients with IV lines, catheters, dressings, or open wounds. However, Ms. Verlander admitted that once, on December 25, 1999, Mr. Dunaway was scheduled "on the floor." It was Ms. Verlander's testimony that if Mr. Dunaway did work "on the floor" at other times, it was of his own volition and not due to scheduling or necessity.
The OWC judge's written reasons placed great emphasis on the testimony of the expert witnesses, noting that Mr. Dunaway's experts, Drs. William Grant and Camille Bitar, were not board certified in infectious diseases, while Lakeview's expert, Dr. David Martin, was board certified in infectious diseases.
Dr. Grant testified in his deposition that he had never seen Pseudomonas aeruginosa as a community-acquired organism, and that it is "nosocomial," meaning that it can only be acquired in a hospital setting. Yet, the OWC judge noted that the literature Dr. Grant attached to his affidavit contradicted his testimony. The literature disclosed that Pseudomonas aeruginosa could be community-acquired, as it thrives in moist settings. The OWC judge also noted that while Dr. Grant testified that Pseudomonas aeruginosa was nosocomial, he presented no supporting documentation to indicate that hospital workers were at a greater risk, and the literature indicated that it was hospital patients who were at an increased risk of infection.
Dr. Bitar acknowledged in his deposition that Pseudomonas aeruginosa was not merely hospital-acquired, but could be community-acquired. He testified that it was his opinion that Mr. Dunaway more likely than not acquired the infectious colonization from his job, but he admitted *136 that he could not rule out other possibilities.
Dr. Martin testified in his deposition that Pseudomonas aeruginosa could be found in various places and could be contracted in a hospital or, just as easily, in any other place. Dr. Martin explained that healthcare workers are not recognized as a group that is at high-risk for Pseudomonas aeruginosa infection. Dr. Martin also explained that Mr. Dunaway could have contracted this organism prior to returning to work in December of 1999, since he did have chronic sinusitis, which made him more susceptible to having a Pseudomonas aeruginosa infection. Additionally, Dr. Martin explained that since a culture was not taken prior to that time, it is not known when Mr. Dunaway could have contracted the organism, and the infection could have occurred when he was hospitalized for his previous surgeries.
Although Mr. Dunaway asserts there exists a presumption that he contracted the occupational disease at his work place, evidence in the record provides a reasonable basis for the OWC finding that this infection was latent and could have been contracted in various settings. Mr. Dunaway's earlier surgeries and hospital stays exposed him to other hospital settings where he could have just as likely have contracted the Pseudomonas aeruginosa infection. The OWC judge heard conflicting expert testimony as to the most likely cause of Mr. Dunaway's infection. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Hull v. Fluker Farms, XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/11/01), 787 So.2d 535, 539-40, writ denied, 2001-2291 (La.11/16/01), 802 So.2d 612. Hence, we are unable to say the OWC judge erred in finding Mr. Dunaway failed to prove he sustained an occupational disease in his employment with Lakeview.

CONCLUSION
For the reasons assigned herein, the OWC judgment is affirmed; all costs of this appeal are assessed to appellant, Timothy K. Dunaway.
AFFIRMED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.