STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-537


PAMELA WELCOME

VERSUS

MARTIN DE PORRES NURSING HOME

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 03-03156
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE
**********


GLENN B. GREMILLION
JUDGE


**********

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy H. Ezell, Judges.

AFFIRMED.

David B. McCain
Brame & McCain
P. O. Box 1844
Lake Charles, LA 70601-1844
(337) 439-4571
Counsel for Plaintiff/Appellant
       Pamela Welcome

Charles V. Musso, Jr.
Plauche, Smith & Nieset
P. O. Box 1705
Lake Charles, LA 70602
(337) 436-0522
Counsel for Defendant/Appellee
       Martin De Porres Nursing Home

GREMILLION, Judge.

The plaintiff, Pamela Welcome, appeals the workers' compensation judge's finding that she failed to prove that her wrist and back conditions were work-related. For the following reasons, we affirm.

**FACTS**

Welcome was employed as a certified nurse's aide by Martin dePorres Nursing Home on three separate occasions, the latest being January 2001 through September 2002. On September 12, 2002, the Nursing Home fired her for burning up a van's engine. Thereafter, on April 29, 2003, Welcome filed a disputed claim for compensation against the Nursing Home seeking medical treatment, compensation benefits, penalties, and attorney's fees for her bilateral carpal tunnel syndrome and lower back pain. She alleged that these conditions arose as a result of her work-related duties, which included lifting patients. Welcome underwent a carpal tunnel release on her right hand on January 10, 2003, with the same procedure recommended for her left hand. She also sought treatment for her lower back pain from Dr. David Duhon, a chiropractor. An August 15, 2003 MRI revealed a broad-based central, left paracentral disc protrusion or herniation at the L5-S1 disc level.

This matter proceeded to a trial on the merits on May 6, 2003. On February 6, 2004, the workers' compensation judge issued oral reasons finding that Welcome failed to prove that either of her conditions was work-related. A judgment was rendered in this matter dismissing her claims against the Nursing Home with prejudice. This appeal by Welcome followed.

1

## ISSUES

On appeal, Welcome raises three assignments of error. She argues that the workers' compensation judge erred in finding that she failed to prove that her carpal tunnel injury was an occupational disease, that she failed to prove a work-related injury to her lower back, and that she was not entitled to medical treatment and compensation benefits.

## OCCUPATIONAL DISEASE

Welcome first argues that the workers' compensation judge erred in holding that she failed to prove her bilateral carpal tunnel syndrome qualified as an occupational disease.

Louisiana Revised Statute 23:1031.1 provides in part:

> A. Every employee who is disabled because of the contraction of an occupational disease as herein defined . . . shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.

> B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. . . .

In order to recover medical and compensation benefits as the result of an occupational disease, Welcome must prove that she developed carpal tunnel syndrome due to the nature of her duties as a nurse's aide. *Dunaway v. Lakeview Reg'l Med. Ctr*, 02-2313 (La.App. 1 Cir. 8/6/03), 859 So.2d 131. The plaintiff's burden in this instance is to prove a connection between her condition and her work-related duties by a reasonable probability. *Id.* Proof of only a possible relationship

between the two does not satisfy this burden. *Id.* The determination of whether a plaintiff has carried her burden of proof is a finding of fact; thus, the workers' compensation judge's finding is reviewed pursuant to the manifest error standard of review. *Banks v. Indust. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551.

Welcome testified that her job duties as a nurse's aide included lifting and changing the patients in their beds, transferring them to wheelchairs, beds, shower chairs, or toilets, and feeding, shaving, bathing, and combing their hair. She also drove them to their doctor's appointments, helped them to and from the van, and sat with them while they waited. As a result of these duties, she stated that her hands and wrists started bothering her during her last term of employment with the Nursing Home.

Welcome's carpal tunnel syndrome was treated by both Dr. Tariq Khan and Dr. Shakeel Sandozi. She testified that she told both doctors that her wrist problems arose as a result of her job duties. In her deposition, she testified that she experienced numbness and tingling in her hand and arms for approximately nine months to a year prior to her April 30, 2002 appointment with Dr. Khan. She further denied telling Dr. Sandozi that she experienced hand and wrist pain for at least two years prior to her initial appointment with him on December 6, 2003.

Dr. Khan, an internist at the W. O. Moss Regional Medical Center, testified that Welcome first complained of right hand pain, numbness, and tingling, especially at night, on April 30, 2002. She complained of similar symptoms in her left hand on July 24, 2002. He testified that his notes contained no mention by her

3

of anything which may have precipitated this condition. A July 31, 2002 EMG revealed moderate bilateral carpel tunnel syndrome, greater on the right.

Dr. Sandozi, Chief of Surgery at Moss Regional, initially saw Welcome on December 16, 2002. He stated that she complained of experiencing pain and numbness in her hands and fingers for a few years, which interfered with her duties as a nurse's aide. Dr. Sandozi diagnosed Welcome as suffering from bilateral carpal tunnel syndrome, worse on the right. He performed a carpal tunnel release on her right hand on January 10, 2003, from which he stated her recovery was uneventful.

Both Drs. Khan and Sandozi identified numerous conditions which can cause carpal tunnel syndrome, such as disease, trauma, and repetitive motions. Dr. Sandozi described the types of duties classically leading to this condition as those involving repetitive actions of the hands and fingers, e.g., typing, cashier work, moving heavy objects, or using vibrating tools. He reluctantly agreed that nurse's aides, typically, do not develop carpal tunnel syndrome. Finally, Drs. Khan and Sandozi both found it difficult to determine whether Welcome's job duties actually caused her carpal tunnel syndrome or whether they simply exacerbated an underlying problem.

The workers' compensation judge held that Welcome failed to prove that her carpal tunnel syndrome was caused by her work-related duties. After reviewing the record, we conclude that the workers' compensation judge reasonably could have concluded that Welcome failed to prove a causal connection between the two. Although carpal tunnel syndrome, in and of itself, is an occupational disease, Welcome still had to prove that her duties caused the condition. Despite being

4

questioned extensively on this issue, neither of her treating physicians would make that connection. When questioned, both equivocated by stating that while her duties may have exacerbated her condition, they were unsure if they actually caused it. Dr. Sandozi further stated that the duties of a nurse's aide typically do not lend themselves to the development this type of condition. Finally, we point to Dr. Sandozi's notes in which he noted Welcome reported suffering from these symptoms for a few years prior to December 16, 2002, and to Dr. Khan's notes which are devoid of any mention by her that this condition was work-related. Thus, we perceive no error in the workers' compensation judge's finding that Welcome failed to prove a causal relationship between her carpal tunnel syndrome and her work duties. Finding no error, this assignment of error is dismissed as being without merit.

## BACK INJURY

In her second assignment of error, Welcome argues that the workers' compensation judge erred in holding that she failed to prove a work-related injury to her lower back.

In order to recover workers' compensation benefits, a injured employee must prove by a preponderance of the evidence that she suffered "a personal injury by accident arising out of and in the course of" her employment. La.R.S. 23:1031(A). An "accident" is defined as an "unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

5

The Louisiana Supreme Court, in *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992), expounded on what proof will satisfy an employee's burden in proving a work-related injury:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson [v. Roadway Express, Inc.*, 588 So.2d 350 (La.1991)]. Corroboration may also be provided by medical evidence. *West, supra*.

> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farms*, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), *writ denied*, 536 So.2d 1200 (La.1988) (collecting cases).

Welcome testified that her lower back gradually started hurting over time during her last period of employment with the Nursing Home. On September 11, 2002, she and co-worker drove a patient to the Veteran's Administration Hospital in Houston, and sat at the hospital all day waiting for his appointment. Welcome stated that her back hurt so badly that later she was unable to drive the Nursing Home's van back to Lake Charles. She reported that she was fired the next day. She stated that she never reported her lower back pain to the Nursing Home because she was afraid that she would lose her job. Nor could she identify a specific incident initiating her

6

pain other than the September incident and her typical duties involving lifting patients. After her termination, Welcome testified that she sought treatment from Moss Regional. She eventually sought treatment from Dr. Duhon, on August 13, 2003. Dr. Duhon ordered an MRI, which revealed a broad-based central, left paracentral disc protrusion or herniation at the L5-S1 disc level.

Dr. Duhon testified that Welcome told him that her back started hurting in May or June 2002, and that it progressively worsened thereafter. He stated that she listed the cause of her pain as being related to her repetitive duties of lifting, pulling, and pushing on patients; however, he stated that she was unable to identify a particular incident as initiating her lower back pain. Dr. Duhon testified that Welcome did indicate one instance when her back started hurting while she was driving, that she was unable to drive afterwards, and that this incident led to her termination.

Dr. Khan testified that Welcome visited the emergency room at Moss Regional on September 13, 2002, at which time she complained of experiencing right-sided lower back and tail bone pain for a long time. The emergency room records indicate that she related this pain to driving. Welcome was subsequently seen by Dr. Khan on November 12, 2002. At that time, she complained of pain in her tail bone for the last year, but reported no history of trauma. Prior to September 2002, Welcome was seen in Moss Regional's Walk-In Clinic on August 29, 2001, for complaints of lower back pain and musculoskeletal strain as a result of heavy lifting. On October 10 and 12, 2001, she returned to the clinic for right groin pain after falling onto her right hip at home. On October 17, 2001, she complained of right

7

thigh pain at Moss Regional's Gynecological Clinic.

The workers' compensation judge held that Welcome failed to prove that her lower back condition was work-related:

I have read and reread the doctor's report and done the same with my notes. I have paid close attention to everyone who testified in live testimony sitting no more than three feet from them at all times, and I can find nothing to support her claim that she has a work related injury. The most liberal and forgiving interpretation of her live testimony and the jurisprudence would leave any trier of fact forced to conclude that she is probably a woman with serious health problems, but the resolution of these problems do not belong in this particular court.

Reviewing this finding pursuant to the manifest error standard of review, we find that the workers' compensation judge was presented with differing views of the evidence and that he chose not to credit the testimony offered by Welcome. Welcome admitted that her lower back condition developed gradually over time. Other than the September 11, 2002 incident, which occurred the day prior to her termination, she could point to no other specific incident as precipitating her condition. She told Dr. Duhon that her pain commenced in May or June 2002, while Moss Regional's records indicate that she was also seen for lower back pain in August 2001. Furthermore, the Nursing Home did not learn of Welcome's alleged injury until she filed her disputed claim for compensation. Considering the conflicting views, we cannot say that it was unreasonable for the workers' compensation judge to find that Welcome failed to prove a work-related injury to her lower back. Accordingly, this assignment of error is dismissed as being without merit.

Considering these findings, we need not discuss Welcome's third assignment of error.

8

**CONCLUSION**

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Pamela Welcome.

**AFFIRMED.**