WHIPPLE, C.J.
Defendants, Gerry Lane Enterprises, Inc. and Tower Insurance Company, appeal a judgment of the trial court, which among other relief, granted plaintiff, Patricia Spann's, motion for judgment notwithstanding the verdict and increased the general damages awarded to Ms. Spann. For the following reasons, we affirm the judgment in part, amend the portion of the judgment increasing the general damage award, and affirm the judgment as amended.
FACTS AND PROCEDURAL BACKGROUND
On June 21, 2011, plaintiff, Patricia Spann, was driving her 2007 Chevrolet Cobalt northbound on South Acadian Thruway in Baton Rouge, Louisiana, when she lost control of her vehicle, crossed the median, and entered the opposite lanes of traffic, making contact with several vehicles driving in the opposite lanes. Ms. Spann was transported from the accident scene via ambulance to Our Lady of the Lake Hospital, where she was treated for thoracic spine fractures, multiple facial *1021 fractures, and a left wrist fracture. Ms. Spann was discharged from the hospital after sixteen days, with a tracheal tube still in place due to continued facial swelling.
On June 8, 2012, Ms. Spann initiated the instant lawsuit, naming as defendants: (1) Gerry Lane Enterprises, Inc. ("Gerry Lane"); (2) Tower Insurance Company, as Gerry Lane's insurer; and (3) Gerry Lane's unidentified employees. Ms. Spann alleged that she lost control of her vehicle due to a faulty power steering system that was replaced by Gerry Lane Chevrolet on July 14, 2010, pursuant to a recall notice that she received from General Motors. Ms. Spann alleged that the power steering system in her Cobalt, as replaced by Gerry Lane, had a redhibitory defect and that Gerry Lane was liable under the Louisiana Products Liability Act. Among other allegations, Ms. Spann further alleged that Gerry Lane: (1) breached its duty of care owed pursuant to LSA-C.C. arts. 2315through 2317.1 ; (2) negligently inspected and replaced unfit and unsafe automotive components; and (3) negligently hired and trained its maintenance personnel.
After answering the lawsuit, Gerry Lane filed a motion for summary judgment, contending that there was no evidence that Gerry Lane improperly performed the power steering system recall work in Ms. Spann's vehicle. Following a hearing, the trial court granted Gerry Lane's motion for summary judgment and dismissed Ms. Spann's claims.[1]
Thereafter, Ms. Spann filed a motion for new trial, seeking review of the trial court's grant of Gerry Lane's motion for summary judgment and the dismissal of her claims. Ms. Spann argued that a new trial was warranted pursuant to LSA-C.C.P. art. 1972(1) and (2), because the judgment granting summary judgment was contrary to the law and, she had obtained new evidence in support of her claims that could not have been obtained, with due diligence, prior to the hearing on the motion for summary judgment. The "new" evidence consisted of an updated affidavit and report from Ms. Spann's expert. The trial court granted the motion for new trial on February 23, 2015[2] and denied Gerry Lane's reurged motion for summary judgment. The matter then proceeded to a jury trial.
At the conclusion of a four-day trial, the jury returned a verdict finding Ms. Spann seventy (70%) percent at fault and Gerry Lane and/or its employees thirty (30%) percent at fault in causing the accident and Ms. Spann's resulting damages. Without regard to the percentages of fault, the jury awarded Ms. Spann $122,338.80 for past medical expenses, $25,000.00 for past lost wages, and $25,000.00 for loss of physical abilities, disfigurement, and impairment. However, the jury did not award Ms. Spann any damages for past and future physical pain and suffering, past and future mental anguish, or loss of enjoyment of life.
Thereafter, Ms. Spann filed a motion for judgment notwithstanding the verdict (JNOV), additur, and/or in the alternative, a motion for new trial for damages only. The trial court signed a judgment on March 1, 2016, in pertinent part, granting the JNOV and leaving the amounts *1022 awarded by the jury in place, but awarding Ms. Spann an additional $400,000.00 for past and future physical pain and suffering, $150,000.00 for past and future mental anguish, and $150,000.00 for loss of enjoyment of life, setting forth that after deductions were taken for Ms. Spann's comparative fault, the additional judgment awarded against Gerry Lane pursuant to the JNOV was $210,000.00.[3]
Gerry Lane and Tower Insurance Company then filed the instant appeal of the March 1, 2016 judgment of the trial court, raising the following assignments of error:
(1) The trial court erred in granting a new trial from the motion for summary judgment where Ms. Spann submitted "new" evidence after the court granted summary judgment that was available to Ms. Spann before the motion for summary judgment was filed.
(2) The trial court erred in denying the reurged motion for summary judgment and directed verdict as plaintiff has no evidence to prove that the power steering motor failed or that Gerry Lane negligently replaced it.
(3) The trial court erred in ruling that Ms. Spann's expert's opinions were admissible under Daubert where the expert's opinions are not supported by evidence.
(4) The trial court erred in allowing Ms. Spann to present evidence derived from her expert's inspections and destructive testing that were conducted in violation of a court order.
(5) The trial court erred in granting JNOV and increasing Ms. Spann's general damages from $25,000.00 to $700,000.00 as the evidence shows a reasonable basis for the jury's verdict.
DISCUSSION
Plaintiff's Expert's Opinion and Inspections
(Assignments of Error Numbers Three and Four)
Defendants Gerry Lane and Tower Insurance Company contend in their third assignment of error that the trial court should have excluded plaintiff's expert's opinion under LSA-C.E. art. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Additionally, defendants contend in their fourth assignment of error that the trial court should have excluded evidence derived from this expert's inspections of the subject motor vehicle because the inspections were conducted in violation of a court order. If a trial court commits an evidentiary error that interdicts its factfinding process, this court must conduct a de novo review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Penton v. City of Hammond Police Department, 2007-2352 (La. App. 1st Cir. 5/2/08), 991 So.2d 91, 95. Accordingly, we first address the evidentiary challenges raised by defendants herein in assignments of error three and four.
At the trial of this matter, Ms. Spann submitted testimony from Edward Carrick, a mechanical engineer, who inspected the subject motor vehicle on several occasions and ultimately opined that the power steering system failed because of faulty *1023 installation by the mechanic at Gerry Lane. Carrick initially inspected the subject motor vehicle on April 23, 2013, during a joint inspection with defendants' expert. Carrick then inspected the subject motor vehicle a second time on May 14, 2014. There was no one present on defendants' behalf at this second inspection. At this second inspection, Carrick found corrosion on the vehicle's fuses that are related to the power steering system. Accordingly, Carrick issued a supplemental report following his second inspection, noting the existence of the corroded fuses related to the power steering system and pointing out several statements that the Gerry Lane mechanic who replaced the power steering system made during his deposition that raised concerns. Carrick ultimately concluded in this supplemental report that "the quality control process present at Gerry Lane Chevrolet regarding supervision of technicians and documentation is unsatisfactory for a professional facility." Carrick then inspected the vehicle again in October of 2014, and again there was no one present on defendants' behalf at this third inspection. During this third inspection, Carrick removed the power steering system. He thereafter issued a third report in the form of an affidavit, stating in pertinent part that during this third inspection, he found filings or shavings inside the cover of the power steering system that "correlated" to problems and failure of the power steering system.
Defendants contend in their third assignment of error that the trial court should not have allowed Carrick to offer his expert opinion because his opinions "are completely baseless and unreliable" and further, that "since Carrick cannot cite any scientific basis for his purported opinion that the power steering assist motor overheated and failed, he must be precluded from testifying as to that issue.
The standard for determining the admissibility of expert testimony was established by the United States Supreme Court in Daubert and is now codified in LSA-C.E. art. 702, which provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles and methods to the facts of the case.
Thus, Daubert primarily concerns the methodology employed by experts. Freeman v. Fon's Pest Management, Inc., 2017-1846 (La. 2/9/18), 235 So.3d 1087, 1090. However, defendants herein object to the conclusions reached by Carrick, not his methodology. Specifically, defendants have not offered any evidence or made any showing that Carrick's methodologies, i.e., his inspections of the vehicle, were improper. See Freeman, 235 So.3d at 1090. Instead, defendants' argument in this assignment of error appears to challenge the weight or credibility of Carrick's opinions, not the admissibility of his expert opinion. See Freeman, 235 So.3d at 1090. Therefore, we find no error or abuse of discretion by the trial court in overruling defendants' Daubert objection as related to the admissibility of Carrick's testimony. Accordingly, we find that defendants' third assignment of error lacks merit.
*1024 Defendants further contend in their fourth assignment of error that the trial court should have excluded evidence derived from Carrick's second and third inspections of the subject motor vehicle as such inspections and/or tests were conducted in violation of a court order.
On February 4, 2013, the trial court signed a Consent Judgment and Order, wherein Ms. Spann and anyone on her behalf were prohibited from:
(1) Altering the subject motor vehicle;
(2) Performing any additional tests without prior court approval;
(3) Removing any parts or components of the motor vehicle;
(4) Disposing of any parts or components of the motor vehicle;
(5) Conducting any destructive tests; and
(6) Storing and handling the vehicle in a manner that did not protect the vehicle and its component parts.
As noted above, it is undisputed that no one was present on defendants' behalf when Carrick inspected the vehicle for a second and third time. Accordingly, defendants contend that the trial court erred in allowing Ms. Spann to present evidence derived from these subsequent inspections, as such evidence was obtained in violation of the February 4, 2013 court order. Additionally, defendants contend that these actions by Ms. Spann and/or her expert should have been excluded as the subsequent inspection "spoliated the evidence."
At the outset, we note that because defendants' spoliation argument was not raised by defendants at the trial court level, it is not properly before us in this appeal. See Boudreaux v. State. Department of Transportation and Development, 2001-1329 (La. 2/26/02), 815 So.2d 7, 9 (finding that the court cannot consider contentions which were not pleaded in the court below and which the district court has not addressed). Indeed, when reurging this issue during the trial of this matter, defense counsel stated, "[I]t's not a spoliation argument, it's a contempt of court argument." Thus, any premised error on this basis is not properly before us for review.
With respect to defendants' remaining argument that the evidence should have been excluded as being obtained in violation of a court order, we note that the trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order, and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion. Capital City Press, L.L.C. v. Louisiana State University System Board of Supervisors, 2013-1803 (La. App. 1st Cir. 12/30/14), 168 So.3d 669, 674. Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court may constitute constructive contempt of court. LSA-C.C.P. art. 224(2). Nonetheless, although a district court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person wilfully disobeyed a court order in violation of LSA-C.C.P. art. 224(2) must be based on a finding that the accused violated an order of the court "intentionally, knowingly, and purposefully, without justifiable excuse." Lang v. Asten, Inc., 2005-1119 (La. 1/13/06), 918 So.2d 453, 454 (per curiam).
In the instant case, Ms. Spann argues that there was no intentional violation of the court order by Carrick, although there may have been negligence. Ms. Spann further points out that the defendants' expert stated during his deposition that he did not need anything further from the subject motor vehicle after the first inspection, and moreover, that the defendants have *1025 not articulated how Carrick's subsequent inspections prejudiced their defense and/or what additional information defendants need from the subject motor vehicle that they can no longer obtain due to these subsequent inspections. After considering these arguments, the trial court concluded that while Carrick's subsequent inspections "troubles the court," there was no showing of any intentional interference with the court's authority nor intent to gain a prejudicial advantage. Accordingly, the trial court denied defendants' motion.
Given the trial court's vast discretion in determining whether a party should be held in contempt of court for violating a court order, we find that the trial court did not err in denying defendant's motion to exclude evidence derived from Carrick's subsequent inspections of the vehicle on the alleged basis that this evidence was obtained in violation of a court order. Accordingly, we find that their fourth assignment of error also lacks merit.
Motion for New Trial
(Assignment of Error Number One)
In their first assignment of error, defendants challenge the trial court ruling granting Ms. Spann's motion for new trial and reversing the summary judgment previously rendered in favor of defendants which dismissed Ms. Spann's claims. Defendants contend that the trial court erred in "re-opening" this judgment, where the "new" evidence submitted by Ms. Spann in support of the motion for new trial was available when the motion for summary judgment was initially heard by the trial court.
A new trial shall be granted, upon contradictory motion of any party, on peremptory grounds in the following cases: (1) the verdict or judgment appears clearly contrary to the law and evidence; (2) important evidence has since been discovered that the mover could not have been discovered with due diligence before or during the trial; or (3) the jury was bribed or behaved improperly so that impartial justice has not resulted. LSA-C.C.P. art. 1972. A new trial may also be granted on discretionary grounds if there is good cause. LSA-C.C.P. art. 1973. The standard of review of a judgment on a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. Wood v. Humphries, 2011-2161 (La. App. 1st Cir. 10/9/12), 103 So.3d 1105, 1116, writ denied, 2012-2712 (La. 2/22/13), 108 So.3d 769. When the trial court grants a new trial based on Article 1972's mandatory ground of a jury verdict being contrary to the law and the evidence, the appellate court must review the record in view of the specific law or evidence found to conflict with the jury verdict to determine whether the trial court abused its discretion in granting a new trial. Wood, 103 So.3d at 1116.
In support of her motion for new trial, Ms. Spann submitted additional evidence, consisting of an updated affidavit and report of Carrick, her expert, as discussed above. In addition to this new evidence, Ms. Spann argued that a new trial was proper as the judgment granting summary judgment was clearly contrary to the law and evidence that was before the court at the hearing on the motion for summary judgment. Specifically, plaintiff argued that the granting of summary judgment was clearly contrary to the law and evidence, because there was sufficient evidence presented in opposition to the motion for summary judgment to establish that a genuine issue of fact existed and remained as to whether Dwight Clement, the Gerry Lane employee who replaced the power steering motor, had properly performed the recall repairs. Accordingly, in further support of the motion for new *1026 trial, Ms. Spann submitted the deposition testimony of Dwight Clement, which was previously submitted to the court by Ms. Spann in opposition to the motion for summary judgment.
On appeal, defendants argue only that the trial court erred in granting a new trial based on "new" evidence that Ms. Spann could have discovered prior to the hearing on the motion for summary judgment. See LSA-C.C.P. art. 1972(2). After reviewing the evidence that was before the trial court at the original hearing on the motion for summary judgment, namely, the deposition testimony of Dwight Clement as discussed in detail below, we are unable to find that the trial court abused its discretion in subsequently granting the motion for new trial on the basis that the grant of summary judgment by the judge pro tempore was "contrary to the law and evidence." See LSA-C.C.P. art. 1972(1). As the record supports the trial court's grant of the motion for new trial on this basis, we pretermit discussion of defendants' argument on appeal pertaining to whether or not the "new" evidence submitted in support of the motion for new trial could have been discovered with due diligence.
Denial of Reurged Motion for Summary Judgment and Directed Verdict
(Assignment of Error Number Two)
Following the trial court's grant of Ms. Spann's motion for new trial, Gerry Lane reurged its motion for summary judgment, wherein it sought a dismissal of Ms. Spann's claims on the alleged basis that there was no evidence that Gerry Lane did not perform the recall work properly. Similarly, at the close of Ms. Spann's case at the trial on the merits, defendants moved for a directed verdict, contending that Gerry Lane could only be at fault if the power steering motor failed and there was no evidence that the motor failed. Accordingly, in the second assignment of error, defendants contend that the trial court erred in denying the reurged motion for summary judgment and their motion for directed verdict, as "plaintiff has no evidence to prove either that the [power steering] motor failed or that Gerry Lane negligently replaced it."
At the outset, we note that a judgment denying a motion for summary judgment is an interlocutory judgment that is not immediately appealable. See LSA-C.C.P. arts. 968 and 2083. However, as with other interlocutory rulings, this court has held, in some instances, that the denial of a motion for summary judgment may be reviewed, and such review is not prohibited or proscribed when an appeal is taken from a final judgment and the matter at issue in the interlocutory ruling is raised on appeal. McGregor v. Hospice Care of Louisiana in Baton Rouge, Inc., 2008-2029 (La. App. 1st Cir. 3/27/09), 2009 WL 838621 (unpublished), writ denied, 2009-1232 (La. 9/18/09), 17 So.3d 980, citing Johnson v. State, Department of Social Services, 2005-1597 (La. App. 1st Cir. 6/9/06), 943 So.2d 374, 377 n. 8, writ denied, 2006-2866 (La. 2/2/07), 948 So.2d 1085, and Dean v. Griffin Crane and Steel, Inc., 2005-1226 (La. App. 1st Cir. 5/5/06), 935 So.2d 186, 189 n. 3, writ denied, 2006-1334 (La. 9/22/06), 937 So.2d 387. However, the Supreme Court has explained that after a full trial on the merits, an appellate court should not restrict its fact review of the motion for summary judgment to the affidavits and other evidence submitted with the motion for summary judgment. Rather, the entire record should be reviewed by the appellate court. Hopkins v, American Cyanamid Company, 95-1088 (La. 1/16/96), 666 So.2d 615, 624.
The law allowing for directed verdicts is set forth in LSA-C.C.P. art. 1810, which provides that a party may *1027 move for a directed verdict at the close of evidence offered by an opponent. A directed verdict should be granted only if the trial court, after considering the evidence in the light most favorable to the opposing party, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. See CF Industries, Inc. v. Turner Industrial Services, Inc., 2011-0540 (La. App. 1st Cir. 8/24/12), 2012 WL 3655247 (unpublished), writ denied, 2012-2106 (La. 12/14/12), 104 So.3d 442. A trial judge has much discretion in determining whether to grant a directed verdict, and the standard of review on appeal is whether reasonable persons could not reach a contrary verdict under the evidence. Davis v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 2003-2219 (La. App. 4th Cir. 11/17/04), 887 So.2d 722, 727, writ denied, 2004-3086 (La. 2/18/05), 896 So.2d 40. The question to be asked by the reviewing court is not whether plaintiff proved his case by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of plaintiffs. Davis, 887 So.2d at 727.
In the instant case, Ms. Spann, among other claims, sought damages from defendants pursuant to LSA-C.C. art. 2316 which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." (Emphasis added.)[4] Moreover, Ms. Spann's petition specifically alleges that Gerry Lane negligently hired and trained its maintenance personnel.
At the trial of this matter, Ms. Spann presented the deposition testimony of Dwight Clement, the Gerry Lane auto mechanic who replaced the power steering system on her vehicle. Clement testified that he was hired by Gerry Lane after being "let go" from Ross Downing automotive in Hammond "for asking too many questions." Clement further testified that although he received service instructions from GM about how to replace power steering systems, Gerry Lane did not provide him with any further instructions or training for this recall work. Moreover, Clement provided inconsistent testimony regarding the extent of his test drives after replacing the recalled motors, as he initially testified that he would only drive the cars around the parking lot, but later testified that he would drive the cars around the block for five to ten minutes. As particularly pertinent to the instant case, he acknowledged that he did not check the fuses when he replaced the power steering systems, but further stated that he was not advised to do so by Gerry Lane or GM. Clement acknowledged that according to the GM recall notice, he was supposed to check and record any diagnostic testing codes ("DTC"), however, he admittedly did not recall ever doing this. Clement further testified that he was eventually fired from Gerry Lane for not tightening bolts properly on a brake repair job and a tire repair job.
During Ms. Spann's case, the jury also heard testimony from Terry Bell, the general manager and operations manager of Gerry Lane. Bell acknowledged that there is no indication in Clement's employment file that his previous employers were contacted prior to Gerry Lane hiring him, *1028 and there are no records indicating that Gerry Lane tested Clement to determine his automotive mechanic competency skills prior to hiring him. Bell further acknowledged that after hearing Clement's testimony regarding his employment history, Gerry Lane may still have hired him, but would have done so with different conditions.
Additionally, as discussed above, the jury also heard testimony from Carrick, a professional engineer who conducted several inspections of the subject motor vehicle. In challenging the jury's decision herein, defendants note that while Carrick did testify that the power steering motor overheated at the time of this accident, he acknowledged on cross-examination that he could not find any physical evidence to prove that the motor overheated. However, this statement by Carrick during cross-examination must be considered in light of the entirety of his testimony. Specifically, Carrick testified that during one of his inspections, as discussed above, he removed the cover to the power steering system and found "black specs" on the motor that indicate motor wear. Moreover, he discovered that the bolts attaching the power steering system were not torqued properly, as well as a corroded fuse that could cause resistance and increased heating of the power steering system. Carrick testified that in his opinion, the corroded fuse would have been visible when Clement replaced the power steering system at Gerry Lane, and noted that Clement admittedly did not check this, as per Clement's own deposition testimony. In sum, Carrick testified that the power steering system on Ms. Spann's vehicle failed because of the faulty and negligent installation by Clement and Gerry Lane's failure to give Clement any instructions.
Considering the allegations of Ms. Spann's petition and after reviewing the testimony and evidence presented by Ms. Spann, we find that there was sufficient evidence to establish that genuine issues of fact remained as to the defendants' alleged negligence in the installation of the power steering system by Gerry Lane and Gerry Lane's alleged negligence in hiring and training Clement. As such, the trial court did not err in denying defendants' reurged motion for summary judgment. Additionally, the evidence was not so overwhelmingly in favor of defendants that reasonable persons could not reach a verdict in favor of the plaintiff, and therefore, the trial court did not err in denying defendants' motion for directed verdict. Accordingly, we find that defendants' second assignment of error lacks merit.
Judgment Notwithstanding the Verdict ("JNOV")
(Assignment of Error Number Five)
In the fifth assignment of error, defendants contend that the trial court erred in granting Ms. Spann's motion for JNOV and increasing Ms. Spann's general damages from $25,000.00 to $700,000.00. As previously stated, following the four-day trial, the jury awarded Ms. Spann past medical expenses in the amount of $122,338.80, past lost wages in the amount of $25,000.00, and loss of physical abilities, disfigurement and impairment in the amount of $25,000.00. These amounts were then discounted by seventy (70%) percent for the percentage of fault assigned to Ms. Spann, resulting in a net verdict of $51,701.64, in favor of Ms. Spann. The jury did not award Ms. Spann damages for past and future physical pain and suffering; past and future mental anguish; past and future mental anguish; loss of enjoyment of life or permanent disability.[5]
*1029 Ms. Spann filed a motion for JNOV and/or additur and, in the alternative, motion for new trial on the issue of damages only.[6] In support of her motion, Ms. Spann argued that the jury verdict is inconsistent as a matter of law and constitutes legal error because the jury did not award any damages for pain and suffering, yet awarded damages for medical expenses. The trial court agreed, advising counsel at the hearing on the JNOV that the judgment was inconsistent and they should advise their clients of such and try to resolve the matter. The parties were not able to resolve the matter, and the trial court thereby rendered a judgment on March 1, 2016, granting Ms. Spann's motion for JNOV and awarding her an additional $400,000.00 for past and future pain and suffering, $150,000.00 for past and future mental anguish, and $150,000.00 for loss of enjoyment of life (totaling $700,000.00). After reducing these amounts by seventy (70%) percent for Ms. Spann's comparative fault, the net amount awarded to Ms. Spann by the trial court was $210,000.00, plus $51,701.64 as awarded to her by the jury, for a total verdict of $261,701.64, in her favor.
On appeal, defendants argue that the trial court erred in granting Ms. Spann's JNOV because the damage award must be looked at as a whole, and accordingly, the jury awarded Ms. Spann $25,000.00 for general damages and this award was not unreasonable based upon the evidence presented in this case.[7]
Notably, in Mason v. Hilton, 2013-2073 (La. App. 1st Cir. 11/7/13), 2013 WL 5969104 (unpublished), a First Circuit case, the jury awarded the plaintiff damages for loss of enjoyment of life, but did not award the plaintiff damages for physical or mental pain and suffering. In finding that the trial court erred in granting the plaintiff's JNOV and increasing the general damage award, this court emphasized that a particular item of general damages should not be reviewed in isolation; rather, the entire general damage award must be reviewed. Accordingly, under the precepts set forth by this court in Mason, supra, we must determine whether reasonable jurors in the exercise of impartial judgment could conclude that the Ms. Spann was entitled to general damages in the amount of $25,000.00 alone, as the jury awarded herein. See *1030 Junot v. Morgan, 2001-0237 (La. App. 1st Cir. 2/20/2002), 818 So.2d 152, 160.[8]
At the trial of this matter, Ms. Spann introduced three large binders of her medical records from her sixteen-day hospital admission at Our Lady of the Lake Hospital following this accident. However, Ms. Spann did not present testimony from any of the physicians who treated her during her sixteen-day hospital stay. Rather, Ms. Spann submitted the deposition testimony of Dr. Gerard Broussard, an emergency room doctor at Our Lady of the Lake Hospital, who treated her on July 27, 2011, three weeks after her initial discharge, when she reported to the hospital following a fall. As part of his testimony, Dr. Broussard reviewed some of the hospital records from Ms. Spann's prior sixteen-day hospital admission. Dr. Broussard testified that according to these records, following the subject motor vehicle accident, Ms. Spann had multiple facial fractures, a left wrist fracture, thoracic spine fractures at T-9 and T-10, a lumbar spine fracture at L-2, and avulsion of the elbow. Her facial fractures were repaired by Dr. Hornsby, who did not testify, and she consulted with a neurosurgeon, who also did not testify. Additionally, Dr. Fahr, who did not testify, inserted a tracheal tube and a PEG (feeding) tube. Dr. Broussard testified that according to the hospital records, Ms. Spann was discharged from the hospital on July 18, 2011, with the tracheal tube still in place due to facial swelling.
Ms. Spann testified that she was in the hospital for sixteen days following the subject motor vehicle accident. Ms. Spann testified that she had surgery on her wrist and she had reconstructive surgery because "she broke every bone in her face." She further testified that she had "the tube" in her neck for three months, she lost forty to fifty pounds, she has three scars on her neck from "the tube," and she has a permanent scar on her elbow.
Ms. Spann's daughters testified that it took their mother three to four months to be able to do things on her own and that their mother still has back pain. Ms. Spann's mother testified that Ms. Spann stayed with her for two to three months after being released from the hospital. During this time, she had to puree food because Ms. Spann had a feeding tube, she had to help Ms. Spann with baths, and she had to cook for her. Ms. Spann's mother further testified that her daughter could not talk for approximately three weeks.
After reviewing the medical evidence and testimony herein, we conclude that the trial court properly granted Ms. Spann's motion for JNOV for the purpose of increasing the general damage award. We find that reasonable and impartial jurors in this case could not differ as to the fact that an award of $25,000.00 for general damages is abusively low, especially in light of the type of physical injuries sustained by Ms. Spann, the duration of her hospital stay, and the continued assistance that she needed at home after being discharged from the hospital.
*1031 Moreover, we agree with the trial court that the verdict in the instant case was an inconsistent verdict. As the Supreme Court recognized in Wainwright v. Fontenot, 2000-0492 (La. 10/17/00), 774 So.2d 70, while it is not necessarily legal error for a jury to award medical expenses without general damages,[9] a reviewing court must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Wainwright, 774 So.2d at 76.
Applying the precepts set forth by the Supreme Court in Wainwright, we find that in awarding Ms. Spann her medical expenses, the jury obviously determined that Ms. Spann sustained injuries as a result of this accident. Moreover, the record establishes that the injuries sustained by Ms. Spann were significant, consisting of facial fractures, spinal fractures, and a wrist fracture. Accordingly, given the particular injuries sustained by Ms. Spann, we find that the jury's determination that she was entitled to medical expenses but not to damages for past physical pain and suffering is so inconsistent herein as to constitute an abuse of discretion. Accordingly, we find that the trial court properly granted JNOV on this additional basis. See Aguillard v. Gregory, 2015-1206 (La. App. 1st Cir. 3/22/16), 2016 WL 1177989 (unpublished), writ denied, 2016-0744 (La. 6/28/16), 194 So.3d 612 (finding that the jury verdict was inconsistent, the trial court recognized it as such, and therefore, the granting of the JNOV was proper).
Having found that JNOV was properly granted as to the general damages awarded, we must now review the trial court's assessment of damages using the well-recognized standards of review as enunciated by the Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994) :
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award..... [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, 623 So.2d at 1260. Upon a finding of an abuse of discretion, the appellate court must adjust an inadequate award to a minimum reasonable amount, or an excessive award to a maximum reasonable amount. Smith v. Roussel, 2000-1028 (La. App. 1st Cir. 6/22/01), 809 So.2d 159, 168.
While we find that the trial court was correct to increase the general damages *1032 awarded to Ms. Spann, we find that increasing the award by $700,000.00 was an abuse of the trial court's discretion. Ms. Spann testified that she was walking around on her own by October or November (approximately four months after the June 21st accident) and driving somewhat; by January she had rejoined the church choir; and by the following June, she was taking care of her elderly father. Ms. Spann did not submit any evidence or testimony regarding future medical procedures that she may require or any ongoing medical care. Ms. Spann did complain of ongoing back pain at the time of the trial, however, she acknowledged that her medical records indicate that six days prior to her June 21st accident, she reported to Earl K. Long Hospital for back pain, depression, and insomnia. She did not present any medical testimony relating to how her injuries sustained in this accident exacerbated her pre-existing back problems. Indeed, Dr. Broussard testified that spinal fractures of the type sustained by Ms. Spann can sometimes heal on their own, and he further testified that when he examined Ms. Spann on July 27, her back was "non-tender," meaning that when he "poked" on her back, she did not complain.
In light of the absence of medical testimony regarding any future medical care or procedures that Ms. Spann may need and Ms. Spann's own testimony regarding the time frame in which she became generally able to resume her normal activities, we find that $125,000.00 is the highest reasonable amount that can be awarded to Ms. Spann for general damages.[10] Accordingly, as the jury previously awarded Ms. Spann $25,000.00 for general damages and the trial court maintained this award, we find that the trial court should have awarded Ms. Spann an additional $100,000.00 for general damages, not an additional $700,000.00. Accordingly, while we find that the trial court properly granted the motion for JNOV, we amend the amount of general damages awarded by the trial court in the JNOV.
CONCLUSION
Based on the above and foregoing reasons, we affirm the portion of the March 1, 2016 judgment of the trial court, granting Ms. Spann's motion for JNOV and maintaining the jury award of $122,338.80 for past medical expenses, $25,000.00 for past lost wages, and $25,000.00 for loss of physical abilities, disfigurement and impairment, subject to reduction in accordance with the trial court's apportionment of *1033 fault. We hereby amend the portion of the March 1, 2016 judgment, awarding Ms. Spann an additional $700,000.00, to reflect that Ms. Spann is awarded an additional $100,000.00 for general damages, subject to reduction in accordance with the trial court's apportionment of fault, and hereby affirm the judgment, as amended. Costs of this appeal are assessed one-half each to defendants, Gerry Lane Enterprises, Inc. and Tower Insurance Company and plaintiff, Patricia Spann.
JUDGMENT AFFIRMED IN PART; AWARD OF GENERAL DAMAGES AMENDED AND AFFIRMED, AS AMENDED.
I respectfully disagree with the majority opinion. My disagreement begins with the majority's analysis of assignment of error number four as a contempt of court issue. Gerry Lane filed a motion in limine to exclude evidence derived from inspections of Ms. Spann's vehicle, which the trial court denied; Gerry Lane reurged the motion at trial, and the trial court again denied it. I do not think the defense attorney's characterization of the issue as a contempt issue makes it one. Rather, I think that our review of the trial court's ruling is an evidentiary issue, not a contempt issue.
When so reviewed, I think the trial court erred in allowing the introduction of evidence derived from Mr. Carrick's second and third inspections, because this evidence was obtained in clear violation of the February 4, 2015 consent judgment, which prohibited Ms. Spann, and anyone on her behalf, from altering her car, performing tests without prior court approval, removing parts from the car, and conducting destructive tests. The evidence improperly admitted includes Mr. Carrick's testimony regarding a corroded fuse, an improperly tightened bolt, and black specks found inside the power steering motor. In my opinion, the trial court's erroneous admission of this evidence interdicted the jury's factfinding and tainted its verdict. See McLean v. Hunter , 495 So.2d 1298, 1304 (La. 1986) ; Maldonado v. Kiewit Louisiana Co. , 2012-1868 (La. App. 1 Cir. 5/30/14), 152 So.3d 909, 918-19, writ denied , 2014-2246 (La. 1/16/15), 157 So.3d 1129. Notably, without the tainted evidence, Judge Downing had correctly granted summary judgment in Gerry Lane's favor, because there was not enough evidence to even suggest that Gerry Lane was liable. It was not until Judge Johnson granted the new trial, and then allowed the jury to hear Mr. Carrick's improperly admitted testimony, that there was evidence suggesting Gerry Lane's liability.
When the erroneous admission of evidence taints a jury verdict, this court steps into the shoes of the factfinder and conducts a de novo review of the admissible evidence, without considering the inadmissible evidence. Maldonado , 152 So.3d at 918-19. In this case, when consideration of the tainted evidence is removed, I do not think Ms. Spann carried her burden of proving that Gerry Lane should be held liable. Gerry Lane's failure to adequately check Mr. Clement's credentials as a competent mechanic before hiring him is not proof that he improperly performed the recall work. And, although Gerry Lane may not have trained Mr. Clement to do this recall work, I see no causal connection, because Gerry Lane was not required to train him. Rather, the record shows Mr. Clement was required to follow and did follow the General Motors Recall Bulletin instructions in completing the recall work. Further, Ms. Spann has not proven that Mr. Clement's faulty test drive caused her car's power steering failure - notably, the car was driven 11 months and over 18,000 *1034 miles after the alleged faulty test drive, without incident. And, even if Mr. Clement failed to run a DTC check as part of the recall work, Ms. Spann has not proven that this failure caused her car's power steering failure - the parties' joint inspection of the car after the accident showed no registered DTCs. Thus, I think Ms. Spann failed to prove a causal link between Gerry Lane's conduct, Mr. Clement's conduct, and the failure of the power steering system in her car.
Based on a de novo review of the admissible evidence, I would reverse the judgment in favor of Ms. Spann and dismiss her claims against Gerry Lane based on her failure to prove that Gerry Lane was at fault for the failure of her car's power steering.

Judge Robert D. Downing, serving by order of the Louisiana Supreme Court as judge pro tempore , presided over the summary judgment proceeding and rendered the judgment granting summary judgment and dismissing Ms. Spann's claims.

Judge Donald R. Johnson, the presiding trial court judge, granted the motion for new trial.

The judgment also addressed the parties' respective motions to tax costs. However, defendants have not assigned error to this part of the judgment, and accordingly, the propriety of the trial court's rulings on the motions to tax costs are not before us on appeal.

See Williams v. Louisiana Machinery Co., Inc., 387 So.2d 8, 12 (La. App. 3rd Cir. 1980) (providing that a repairer has a duty, arising in tort, to exercise reasonable care and skill in the design and repair of the object to be repaired commensurate with the risk of harm flowing from the normal use of that product).

The jury verdict contained the following pertinent questions:
5. Without regard to any percentages that you have given in your answer to Question 4, state the entire amount of damages suffered by Patricia Spann, if any, as a result of the accident on June 21, 2011.
 Answer in dollars: Past medical expenses: $122,338.80 Past and future physical pain and suffering: $0 Past and future mental anguish: $0 Loss of enjoyment of life: $0 Past lost wages: $25,000.00 Permanent disability: $0 Loss of physical abilities, disfigurement, and impairment $25,000.00 Total $172,338.80 

We initially note that Ms. Spann moved for a JNOV and, in the alternative, a motion for new trial. The judgment on appeal grants only the JNOV and is silent as to the trial court's ruling on the alternative motion for new trial. This court has held that in such cases, the trial court's silence is construed as an implicit denial of the alternative motion for new trial, and accordingly, this court has jurisdiction to review the judgment granting the JNOV as there is no "pending" motion for new trial. See Pritchett v. Dollar General Corp., 2010-1466 (La. App. 1st Cir. 5/6/11), 2011 WL 1940435 (unpublished), writ denied, 2011-1165 (La. 9/16/11), 69 So.3d 1150 ; Junot v. Morgan, 2001-0237 (La. App. 1st Cir. 2/20/02), 818 So.2d 152, 156.

General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. American Central Insurance Company v. Terex Crane, 2003-0279 (La. App. 1st Cir. 11/7/03), 861 So.2d 228, 235, writ denied, 2004-0327 (La. 4/2/04), 869 So.2d 881. Accordingly, the jury's award herein for $25,000.00 for loss of physical abilities, disfigurement, and impairment constitutes a general damages award.

On review of a JNOV award of higher quantum, the appellate court employs the same criteria as the trial court. If reasonable men, in the exercise of impartial judgment, could reach differing opinions on whether the award was abusively low, then the trial court erred in granting the JNOV and the jury's damage award should be reinstated. Junot, 818 So.2d at 160. On the other hand, if reasonable men could not disagree, then the trial court properly granted the JNOV and the appellate court will review the damage award based on the trial court's independent assessment of damages under the abuse of discretion standard. Junot, 818 So.2d at 161. This determination is made with consideration to the individual circumstances of the injured plaintiff. Granger v. United Home Health Care. 2013-0910 (La. App. 1st Cir. 6/19/14), 145 So.3d 1071, 1089. writ denied, 2014-1665 (La. 10/31/14), 152 So.3d 158.

Notably, the plaintiffs in Wainwright, supra, did not allege any physical injuries, but sought pain and suffering due to their minor child's brief overdose and hospitalization. Wainwright, 774 So.2d at 77.

See Anderson v. Tenneco Oil Company, 2001-0296 (La. App. 4th Cir. 5/22/02), 826 So.2d 1143, 1158, writ denied, 2002-2035 (La. 11/1/02), 828 So.2d 585 (finding $100,000.00 was an appropriate general damage award for plaintiff in boating accident, no fault assessed to plaintiff, who sustained a broken cheekbone, broken jaw, cracked teeth, swollen face, hemorrhaging into his right eyeball, and damage to his back and neck); Rhodes v. State Department of Transportation and Development, 94-1758 (La. App. 1st Cir. 12/20/96), 684 So.2d 1134, 1145-46 (finding $100,000.00 was an appropriate general damage award for plaintiff in automobile accident, no fault assessed to plaintiff, who sustained lacerations to scalp, myofascial strains of cervical and thoracic regions, displaced and fractured jaw, requiring several surgeries and liquid diet for six weeks); Thibodeaux v. Comeaux, 2011-127 (La. App. 3rd Cir. 6/15/11), 69 So.3d 674, 677, 683 (finding $125,000.00 was an appropriate general damage award for plaintiff in automobile accident, sixty (60%) percent at fault, who suffered two fractures of her lower jaw, two fractured vertebrae at T12 and L1, three fractures to her pelvis, and a lacerated spleen, was in intensive care for three days, hospitalized for a total of nine days, and while hospitalized, underwent surgery to repair the fractures of her jaw, including wiring her jaw closed, when another surgical procedure was performed to remove the bars which held her jaw closed, and requiring that she remain on a liquid diet during that time).